Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Susan Mast*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Mast, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Life Insurance Company of North America; Discover Financial Services; Discover Financial Services Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Susan Mast (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Discover Financial Services (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Life Insurance Company of North America (hereinafter referred to as "LINA"). The specific LINA group long-term disability policy is known as Group Policy No.: VDT-980047 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Discover Financial Services Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, LINA functioned as the claim administrator of the Policy. However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

6. LINA operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. LINA's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8. The Company, LINA and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

10. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11. After working for the Company as a loyal employee, Plaintiff became disabled on or about September 10, 2011, due to serious medical conditions and was unable to work in her designated occupation as a Team Leader. Plaintiff has remained continuously disabled as that term is defined in the relevant Policy since the day she became disabled and has not returned to work in any occupation as a result of her serious medical conditions.

12. Following the onset of her disability, Plaintiff filed a claim for short-term disability benefits which was approved and those benefits have been paid and exhausted.

13. Following the exhaustion of her short-term disability claim/benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by LINA. LINA made every decision in Plaintiff's long-term disability claim.

14. Upon information and belief, the relevant LINA Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> "The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>   1. Unable to perform the material duties of his or her Regular Occupation; and
>   2. Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>   1. Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
>   2. Unable to earn 80% or more of his or her Indexed Earnings."

15. In support of her claim for long-term disability benefits, Plaintiff submitted to LINA medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

16. LINA approved Plaintiff's long-term disability claim and paid her disability benefits for the 24 month "Regular Occupation" period, or through February 27, 2014. Following a review to determine whether Plaintiff met the "Any Occupation" definition of disability in the LTD Policy, LINA terminated Plaintiff's disability claim and benefits without any medical documentation to support its allegation that Plaintiff's medical conditions had improved in such a way that she could return to an occupation where she could earn at least 80% of her Indexed Earnings as defined in the Policy.

-4-

17. During the period of time Plaintiff was receiving long-term disability benefits, she also applied for, was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

18. Plaintiff informed LINA that her claim for Social Security disability benefits had been approved and she submitted to LINA documentation from the SSA which confirmed the approval.

19. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of September 9, 2011, Plaintiff's alleged disability onset date. Plaintiff's evidence was so persuasive the Social Security Administration approved her claim without her even needing to attend a hearing before an Administrative Law Judge.

20. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the LINA Policy for the first 24 months of disability and substantially similar to the Policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim and the fact that SSA has continued to pay her benefits through the present date is relevant evidence for this Court to consider with regard to the unreasonableness of LINA's decision to deny Plaintiff's claim and to terminate her benefits.

21. In a letter dated February 27, 2014, LINA informed Plaintiff that it was terminating her long-term disability benefits beyond February 27, 2014.

22. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's February 27, 2014 termination of her benefits and submitted additional medical and vocational evidence supporting her appeal and her allegation that she is disabled and meets the definition of disability in the Policy.

23. Plaintiff submitted to LINA a September 12, 2014 narrative letter authored by her board certified treating physician who opined, "I would agree with the statements noted from the [Functional Capacity Evaluation] including the patient being unable to perform the physical demands of any type of work including sedentary work on a regular and consistent basis."

24. Plaintiff also submitted to LINA a Functional Capacity Evaluation report dated June 16, 2014, wherein after an extensive several hour evaluation, a qualified physical therapist concluded that, "…[Plaintiff] is unable to perform the physical demands of any type of work including SEDENTARY work on a regular and consistent basis." (Original emphasis).

25. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated October 6, 2014, who after reviewing Plaintiff's aforementioned evidence, the definition of disability in the Policy as well as interviewing her concluded, "From a vocational standpoint, it is without question that [Plaintiff] is unable to engage in any competitive employment that may exist in the national economy."

26. Plaintiff also submitted updated medical records from each of her treating providers.

27. As part of its review of Plaintiff's claim for long-term disability benefits, LINA obtained medical records only "paper reviews" of Plaintiff's claim from two physicians named Andrew M. Schneider, M.D. and Harold L. Rappaport, M.D. LINA did not disclose the names of the reviewing physicians or their reports to Plaintiff during its administrative review of her claim.

28. Upon information and belief, Plaintiff alleges Drs. Schneider and Rappaport may be long time medical consultants for LINA and/or the disability insurance industry. As

a result, Plaintiff alleges Drs. Schneider and Rappaport may have an incentive to protect their own consulting relationships with LINA and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny disability claims.

29. In a letter dated December 30, 2014, LINA informed Plaintiff it was denying her claim for long-term disability benefits.

30. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's December 30, 2014 denial of her claim.

31. In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to LINA additional medical, vocational and lay-witness evidence which demonstrated that she met any definition of disability set forth in the Policy.

32. Plaintiff submitted to LINA an August 26, 2015 narrative letter authored by her board certified treating physician who opined, "…I do feel that the patient is disabled from all competitive work requirements."

33. Plaintiff submitted to LINA a September 16, 2015 Independent Medical Examination report authored by a board certified physician who following an examination of Plaintiff concluded, "I agree that [Plaintiff] would be unable to perform work even at [a] sedentary category…"

34. Plaintiff also submitted to LINA a second Functional Capacity Evaluation report dated June 24, 2015, wherein after an extensive three hour evaluation, another qualified physical therapist concluded, "…[Plaintiff] would not be able to function at a ***<u>sedentary work category</u>***." (Original emphasis).

35. Further supporting her claim, Plaintiff submitted a vocational report dated October 16, 2015 from a certified vocational expert who after reviewing Plaintiff's aforementioned evidence, the definition of disability in the Policy as well as interviewing her concluded, "To a reasonable degree of vocational probability, for the reasons referenced in my report, [Plaintiff] is not able to work in any occupation and meets the definition of disability in the Cigna policy."

36. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

37. In addition to the medical records and reports submitted to LINA, Plaintiff submitted two (2) sworn affidavits from herself and her mother, who both confirmed that Plaintiff is unable to work in any occupation and that her medical conditions had not improved in any meaningful way since her date of disability.

38. In addition, Plaintiff submitted to LINA a complete copy of her Social Security disability claim file that she received from the Social Security Administration so it could consider this evidence as part of its review.

39. LINA entered into a Regulatory Settlement Agreement ("RSA") with the Arizona Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "A" to this Complaint). Plaintiff reminded LINA of this agreement and its claim responsibilities by submitting a copy of the agreement to LINA during the administrative review of her long-term disability claim.

40. The RSA resulted from a multistate examination of LINA's disability claims practices which led to regulatory concerns, a corrective action plan with

regulatory monitoring of LINA by governmental agencies in LINA's evaluation of its disability claims, which includes similarly situated insureds such as the Plaintiff.

41. As part of the RSA, LINA agreed to pay $925,000 in fines to the participating state regulatory agencies.

42. As part of the RSA, LINA agreed to collectively pay 5 different states' regulatory agencies hundreds of thousands of dollars for claims monitoring.

43. The terms of the RSA apply to Plaintiff's claim and the terms of the RSA are relevant in this action as it relates to whether LINA complied with those terms in its review of her claim.

44. Plaintiff alleges that LINA's review of her long-term disability claim failed to fully comply with the terms of the RSA which precluded a full and fair review. Plaintiff is entitled to discovery with regard to LINA's efforts to comply with the terms of the RSA during its review and decision making in disability claims.

45. As part of its review of Plaintiff's claim for long-term disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing. LINA did not disclose to Plaintiff, either during the administrative review of her claim or following its final denial of her claim, the name or report authored by the physician who reviewed her claim.

46. Upon information and belief, Plaintiff alleges the reviewing physician may be long time medical consultants for LINA and/or the disability insurance industry. As a result, Plaintiff alleges the reviewing physician may have an incentive to protect his or her own consulting relationship with LINA and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as

occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny claims.

47. In letters dated August 19, 2015, October 19 2015, January 13, 2016 and February 23, 2016, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity for her and her treating physicians to respond to the reviews prior to LINA rendering a decision in her claim.

48. Prior to rendering its final denial in Plaintiff's claim, LINA never shared with Plaintiff the medical records only "paper review" authored by the physician who reviewed her claim so she could respond to the report and perfect her claim. LINA's failure to provide Plaintiff with the opportunity to respond to the report is an ERISA procedural violation, it precluded a full and fair review pursuant to ERISA and also violates Ninth Circuit case law.

49. In a letter dated May 12, 2016, LINA notified Plaintiff it had denied her claim for long-term disability benefits pursuant to the Policy. In the letter, LINA also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

50. Upon information and belief, LINA's May 12, 2016 denial letter confirms that it failed to provide a full and fair review and in the process committed several ERISA procedural violations and RSA violations. LINA violated ERISA for numerous reasons including completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability of disability in the Policy.

51. In evaluating Plaintiff's claim on appeal, LINA owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do.[1]

52. LINA failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so she could perfect her appeal and claim. LINA's failure to investigate the claim and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is a reason she did not receive a full and fair review.

53. Plaintiff alleges LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and the terms of the RSA, by failing to have Plaintiff's claim reviewed by a truly independent medical professional; by failing to adequately evaluate and consider the consistent and ongoing approval of Plaintiff's SSA claim; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and the denial of her claim; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing physician's reports and submit the necessary evidence to perfect her claim and by failing to consider the impact the side effects that Plaintiff's medications would have on her ability to engage in any occupation.

54. Plaintiff alleges a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest that manifested as a result of the dual roles LINA undertook as the decision maker and the payor of benefits. LINA's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did, it saved itself money.

55. Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest. Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by LINA to retain a reviewing medical professional in Plaintiff's claim and of *any* individual who reviewed her claim.

56. Plaintiff alleges the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation and/or RSA violation which may have impacted or influenced LINA's decision to deny her claim.

57. The standard of review for this Court to apply is *de novo* as the LINA Policy does not contain discretionary language.

58. As a direct result of LINA's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in

1 addition to other potential non-disability employee benefits she may be entitled to receive
2 through or from the Plan, from any other Company Plan and/or the Company as a result of
3 being found disabled. Plaintiff believes that other potential non-disability employee
4 benefits may include but not be limited to, health and other insurance related coverage or
5 benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of
6 the premium on a life insurance policy providing coverage for her and her
7 family/dependents.

8   59.   Pursuant to 29 U.S.C. §1132, in this action Plaintiff seeks and is entitled to
9 recover unpaid disability and non-disability employee benefits, prejudgment interest,
10 reasonable attorney's fees and costs from Defendants.

11   60.   Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
12 §20-462, or at such other rate as is appropriate to compensate her for the losses she has
13 incurred as a result of Defendants' nonpayment of benefits.

14   WHEREFORE, Plaintiff prays for judgment as follows:

15   A.   For an Order finding that the evidence in Plaintiff's claim is sufficient to
16 prove she meets the definition of disability set forth in the relevant Plan and/or Policy and
17 that she is entitled to disability benefits, and any other non-disability employee benefits
18 she may be entitled to as a result of that Order, from the date she was first denied these
19 benefits through the date of judgment with prejudgment interest thereon;

20   B.   For an Order directing Defendants to continue paying Plaintiff the
21 aforementioned benefits until such a time as she meets the conditions for the termination of
22 benefits;

23   C.   For attorney's fees and costs incurred as a result of prosecuting this suit
24 pursuant to 29 U.S.C. §1132(g); and

1  D.  For such other and further relief as the Court deems just and proper.

2  DATED this 25th day of July, 2016.

<br>

4                                               S<small>COTT</small> E. D<small>AVIS</small>. P.C.

5                                               By:    */s/ Scott E. Davis*
                                                        Scott E. Davis
6                                                       Attorney for Plaintiff

-14-